IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARQUIS RAMEY,** | : | **CIVIL ACTION** |
| *Petitioner* | : | |
| v. | : | |
| | : | |
| **ROBERT MERSH** *et al.*, | : | **No. 21-2140** |
| *Respondents* | : | |

**MEMORANDUM**

PRATTER, J.                                             JANUARY 14th, 2022

Marquis Ramey was convicted in state court after police found guns in his car. Insisting that the guns were not his, Mr. Ramey faults the Commonwealth for not testing the guns for his DNA. But his *Brady* claim is too late, and it fails on the merits. The Court thus adopts the Report and Recommendation of Magistrate Judge Richard A. Lloret and denies Mr. Ramey's petition.

### BACKGROUND

#### A. The Conviction

In Darby, Pennsylvania, a resident caught an intruder trying to kick in his door at 4 a.m. When police arrived, a neighbor informed them that she had seen a blue Buick with tinted windows driving nearby at the time. Three blocks away, police stopped Mr. Ramey, who matched the description of the intruder.

Police then found the blue Buick about 100 feet away. It was registered to Mr. Ramey. In the car sat another man in the passenger seat, with a gun at his feet. There was a crowbar on the driver's side floor and a gun in the center console, plus Mr. Ramey's driver's license and debit card in the driver's door. Both guns had been reported stolen. Mr. Ramey and the other man in the car had previously been convicted of felonies and so were not permitted to carry firearms.

1

After a bench trial, Mr. Ramey was acquitted of attempted robbery but convicted of possessing a firearm without a license, being a prohibited person in possession of a firearm, and possessing stolen property, among other charges. He was sentenced to 9 to 20 years in prison.

### B. Post-Conviction Relief

Mr. Ramey filed a direct appeal, challenging the trial court's refusal to suppress the evidence found in his car. Finding that the evidence had been properly admitted, the Superior Court affirmed his conviction. *Commonwealth v. Ramey*, No. 3513 EDA 2014, 2016 WL 153272, at *1– 2 (Pa. Super. Ct. Jan. 13, 2016). The Pennsylvania Supreme Court denied his request for an appeal. *Commonwealth v. Ramey*, 145 A.3d 725 (Table) (Pa. 2016).

Mr. Ramey then filed his first *pro se* challenge under the Pennsylvania Post Conviction Relief Act. The PCRA court appointed counsel, but Mr. Ramey moved to represent himself, which the court granted. The court then dismissed his petition. Mr. Ramey appealed to the Superior Court, challenging, among other things, the sufficiency of the evidence for his convictions for possessing a firearm and carrying a firearm without a license. *Commonwealth v. Ramey*, 2019 WL 764540, at *1 (Pa. Super. Ct. Feb. 21, 2019). The Superior Court dismissed his challenges as waived and procedurally barred, explaining that he should have challenged the sufficiency of the evidence on direct appeal. *Id.*; *see Commonwealth v. Bond*, 819 A.2d 33, 40 (Pa. 2002). Mr. Ramey did not appeal to the Pennsylvania Supreme Court.

Mr. Ramey then filed a second *pro se* PCRA petition. This time, he sought post-conviction DNA testing of the guns, which is permitted under Pennsylvania law in limited circumstances. The PCRA court found that Mr. Ramey had requested the DNA testing too late. It also decided that he had not shown that DNA evidence "would establish" his "actual innocence." 42 Pa. Cons. Stat. § 9543.1(c)(3)(ii)(A). To the contrary, the court found, the trial featured "ample evidence ... that

2

[Mr.] Ramey was in *constructive* possession of the firearms." Doc. No. 5-6, at 47 (emphasis added). That is, even though Mr. Ramey was not found touching a firearm, he still had knowledge of and control over the guns in his car. *Commonwealth v. Cruz*, 21 A.3d 1247, 1253 (Pa. Super. Ct. 2011).

The Superior Court affirmed, agreeing that Mr. Ramey should have requested DNA testing prior to trial. *Commonwealth v. Ramey*, 2020 WL 1673768, at *3 (Pa. Super. Ct. Apr. 6, 2020). It did not consider whether the DNA evidence would have exonerated him. *Id.* at *4 n.6.

Mr. Ramey then filed this habeas petition. 28 U.S.C. § 2254. He raised two claims: First, he said, the Commonwealth committed a *Brady* violation by not testing the two guns for DNA or, if it did test the guns, by not turning over those tests. Second, he claimed, the trial court violated due process and a state procedural rule when the court took eight months to rule after a suppression hearing. In his Report and Recommendation, Judge Lloret found that both claims were procedurally defaulted and meritless. Mr. Ramey filed timely objections, but only as to his first claim. The Court reviews that claim "de novo." 28 U.S.C. § 636(b)(1)(C). For his other claim, the Court concurs with Judge Lloret's findings and so adopts that portion of his R&R.

## LEGAL STANDARDS

Federal courts can hear habeas petitions from state prisoners, but only in limited circumstances. The prisoner must first have "exhausted the remedies available in" state court, usually through a direct appeal and then a post-conviction petition. 28 U.S.C. § 2254(b)(1)(A). The prisoner must also have timely presented his current claim to the state court. In Pennsylvania, a prisoner must bring his post-conviction claims within one year of the final decision on his direct appeal. 42 Pa. Cons. Stat. § 9545(b). If he does not do so, then he has procedurally defaulted those claims. That means he cannot later raise them in a federal habeas petition, for federal courts must

3

respect the state's "adequate and independent state procedural ground" for not considering the time-barred claims. *Wainwright v. Sykes*, 433 U.S. 72, 82 (1977).

To overcome this procedural default, the prisoner has two choices: One, he can show that he had good "cause" for his failure to follow state procedures and that he experienced "prejudice" from the underlying constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Or he can show that it would be a "fundamental miscarriage of justice" for the federal court not to hear his petition because he is "probably" "innocent." *Id.* at 748 (internal quotation marks omitted).

Courts must read *pro se* submissions generously. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Yet that does not relieve prisoners of their burden to satisfy the stringent requirements for habeas relief.

## DISCUSSION

Mr. Ramey objects that the Commonwealth did not test the two firearms found in his car for DNA or that, if it did, the Commonwealth failed to turn over those tests prior to trial. Magistrate Judge Lloret's Report and Recommendation found that this *Brady* claim failed on the merits. Either way, the R&R found, this claim was procedurally defaulted because Mr. Ramey never raised it in state court. This Court agrees and adopts the R&R in full.

### I. Mr. Ramey has not shown that the Commonwealth failed to turn over material evidence

Under the Fifth Amendment, prosecutors have a duty to turn over exculpatory test results—but only if they have them. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Police have "no constitutional duty to perform any particular tests," *Arizona v. Youngblood*, 488 U.S. 51, 59 (1988), or to "create exculpatory evidence that does not exist," *United States v. Monroe*, 943 F.2d 1007,

1011 n.2 (9th Cir. 1991).[1] Here, as Judge Lloret explained, though the Commonwealth swabbed the guns to try to collect DNA, it apparently never ran any tests. Thus, the Commonwealth had no results to hand over. That means the Commonwealth cannot have committed a *Brady* violation. *United States v. Alverio-Melendez*, 640 F.3d 412, 424 (1st Cir. 2011).

Even if the Commonwealth had failed to hand over DNA results, that still would not automatically be a *Brady* violation. The test results must also have been "material." *Strickler v. Greene*, 527 U.S. 263, 280 (1999). That is, there must be a "reasonable probability" that, had the test results been disclosed, he would have been acquitted of the gun charges. *Id.* Mr. Ramey has made no such showing here.

The Commonwealth's theory at trial was that Mr. Ramey *constructively* possessed the guns. For constructive possession, the prosecutor had to prove that Mr. Ramey "had knowledge of the gun[s]" and "the power and intent to exercise control of" them. *Cruz*, 21 A.3d at 1253. Defense counsel pointed out that Mr. Ramey was "never seen possessing a gun" or "touching that gun in any way, shape or form." Doc. No. 7, Aug. 18, 2014 Trial Tr. at 92:1–2. In response, the prosecutor gestured to the circumstantial evidence showing that Mr. Ramey knew of the guns and could control them: Both guns were found in Mr. Ramey's car, near Mr. Ramey's I.D. and debit card. Mr. Ramey was stopped 100 feet away from his car, at 4 a.m. in a neighborhood where he did not live. When questioned by police, he claimed to have taken the trolley to the neighborhood—even though his car was mere blocks away. To the prosecutor, those circumstances, plus his signs of

---

[1] Even without a constitutional duty, police have strong incentives to perform such tests. Otherwise, prosecutors might not be able to prove their case beyond a reasonable doubt. *See Youngblood*, 488 U.S. at 59. Here, defense counsel turned the lack of DNA evidence back on the Commonwealth, arguing that the Commonwealth had failed to sufficiently tie Mr. Ramey to the guns. *See* Doc. No. 7, Aug. 18, 2014 Trial Tr. at 107:18–21 ("They have to show more evidence, Judge. There's DNA swabs that are taken from the guns that are never submitted … . So we don't know what the results would have been on those.").

conscious guilt, amounted to "constructive possession." Doc. No. 7, Aug. 18, 2014 Trial Tr. at 94:2–3. The trial court apparently agreed, as it convicted Mr. Ramey on the gun charges.

Under Pennsylvania law, multiple people can constructively possess a gun, so long as they have "joint control [of] and equal access" to the gun. *Commonwealth v. Sanes*, 955 A.2d 369, 373 (Pa. Super. Ct. 2008), *overruled on other grounds by Commonwealth v. Hanson*, 82 A.3d 1023, 1038 (Pa. 2013). Thus, even assuming that the DNA on the gun came back negative or inconclusive for Mr. Ramey, or even that the DNA matched someone else, those results would not create a reasonable probability that Mr. Ramey would have been acquitted of constructive possession of the guns in *his* car, next to *his* belongings. *See Commonwealth v. Livingston*, 2017 WL 6462526, at *6 (Pa. Super. Ct. Dec. 19, 2017). This *Brady* claim fails on the merits.

## II.   Mr. Ramey procedurally defaulted this *Brady* claim

Besides, Mr. Ramey has procedurally defaulted this claim, for this petition is the first time that Mr. Ramey has raised it. Petitioners must provide state courts with "a full and fair opportunity" to address a claim, or else the claim is procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To overcome the procedural default, the petitioner must either show good cause for the default and prejudice from the underlying constitutional error, or he must prove that he is actually innocent. Mr. Ramey has done neither.

### A. Mr. Ramey did not raise a *Brady* claim in state court

In his second PCRA petition, Mr. Ramey requested a post-conviction DNA test. In doing so, he cited *Brady* twice. But he did so not to raise a separate, standalone *Brady* claim but to show cause for his failure to request the DNA test prior to trial. To get a post-conviction DNA test, Pennsylvania law requires that the prisoner not have been able to request the DNA test earlier, prior to trial. 42 Pa. C.S. § 9543.1(a)(2). As Mr. Ramey pitched it, the state court should have excused his belated request because his trial counsel had been constitutionally ineffective by

6

"fail[ing] to argue and present testimony of DNA evidence that was withheld by the prosecution (Brady claim)." Doc. No. 5-5, at 121. In other words, his claim was for new DNA testing under Pennsylvania statute; his roundabout, bare bones reference to *Brady* was just a subpart of that request.[2] Based on this framing, Mr. Ramey never "fairly present[ed]" a separate, standalone *Brady* claim to the state courts. *Evans v. Ct. of Common Pleas, Del. Cnty., Pa.*, 959 F.2d 1227, 1231 (3d Cir. 1992); *cf. Bridges v. Beard*, 941 F. Supp. 2d 584, 600 (E.D. Pa. 2013) (finding petitioner had put state court "on notice" of "the factual and legal bases of his *Brady* claim" as he had "repeatedly cited *Brady* in his briefs and arguments to the court" and had "presented evidence relevant to the elements of a *Brady* claim").

Mr. Ramey suggests that his request for a post-conviction DNA test is similar enough for his current *Brady* claim to count as having been presented to the state court. For that, the two claims would have to be "the substantial equivalent." *Evans*, 959 F.2d at 1231. They are not, for each claim involves entirely different legal theories. *Id.* In his second PCRA petition, he sought permission to conduct a post-conviction DNA test under a *Pennsylvania statute*. Now, he raises a *constitutional* challenge faulting the police for not having conducted such a test already, or, if they had, for failing to turn it over. Because the two claims do not overlap, his *Brady* claim has been procedurally defaulted.

### B. Mr. Ramey has not shown cause for this procedural default

Mr. Ramey claims to have good cause for his default, for he "did not have any say in his direct appeal." Doc. No. 9, at 2. Even still, he is bound by his counsel's tactical decisions, unless

---

[2] It was also a contradictory reference at that. Under Pennsylvania's post-conviction DNA testing statute, Mr. Ramey sought a *new* DNA test. By definition, as explained above, a *Brady* claim would involve an *old* DNA test that the Commonwealth failed to hand over. Thus, Mr. Ramey's brief reference to *Brady* in his second PCRA petition is better read not as a *Brady* claim at all but as a claim for ineffective assistance of counsel: his trial counsel provided constitutionally ineffective assistance of counsel in failing to request the DNA test before trial, thus excusing his belated request for a DNA test now.

7

he can show that those decisions were the results of constitutionally ineffective assistance of counsel. *Reed v. Ross*, 468 U.S. 1, 13 (1984). In his objections, Mr. Ramey does not even allege that his counsel was ineffective, much less prove so. Besides, Mr. Ramey represented himself in both of his PCRA proceedings and yet never raised the claim. He cannot fault counsel for that. *See Fischetti v. Johnson*, 384 F.3d 140, 154 (3d Cir. 2004). Thus, Mr. Ramey has not shown cause to excuse his default.

### C. Mr. Ramey has not shown that he is actually innocent

Nor has Mr. Ramey shown that it would be "a fundamental miscarriage of justice" not to overlook the default. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). For this exception, Mr. Ramey must prove that he is "actually innocent," such that "no reasonable juror would have convicted him." *Id.* at 327 (internal quotation mark omitted). To meet this exceptionally high bar, Mr. Ramey must produce "new reliable evidence," like "critical physical evidence," "that was not presented at trial." *Id.* at 324.

Mr. Ramey identifies two pieces of evidence that he claims shows his actual innocence. First, he points to a forensics report of shoe prints from the site of the attempted robbery. This report was admitted at his trial and so does not count as "new" evidence. Either way, the forensic report does not show that he is actually innocent of the gun convictions. Per the report, none of the prints matched the shoes that Mr. Ramey wore the night of the robbery. To Mr. Ramey, that suggests that a "different assailant" tried to break into the house. Doc. No. 9, at 7. That makes this report pertinent to the charge of attempted robbery (of which he was acquitted). But the report and the shoe prints have nothing to do with his constructive possession of the guns in his car.

Second, Mr. Ramey points to the DNA test, claiming that the test could prove his innocence. But, as Judge Lloret explained, the mere *potential* that Mr. Ramey might uncover new

8

evidence that fatally undermines his convictions is not the same as him *actually producing* evidence that does. To overcome his procedural default, he must do the latter. Because he has not provided new evidence showing his actual innocence, the Court cannot look past his procedural default.

## CONCLUSION

For these reasons, the Court overrules Mr. Ramey's objections and adopts the R&R in full. Because reasonable jurists would not "find it debatable" that Mr. Ramey procedurally defaulted his *Brady* claim, the Court will not issue a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE